## JOSEPH CLARK *v.* LEWIS LILLIE.

### *Principal and Agent.*

The defendant appointed one Sadler his agent to sell safes. Sadler was not to appoint any sub-agents, but if he employed others to aid him in the sales he Sadler, was to pay them for their services out of *his* commissions, and the defendant was to be responsible to *no one* but Sadler. Sadler employed the plaintiff to sell the defendant's safes in Brattleboro at a commission of ten per cent. but said nothing to the plaintiff designed or calculated to give the plaintiff to suppose he was to look to any one but the defendant for his commissions. *Held,* that if the case stopped here the defendant would not be liable to the plaintiff for the commissions; but it appearing in addition that the defendant in reply to a letter from the plaintiff, stating the arrangement with Sadler, wrote the plaintiff that Sadler was authorized "to make about such a trade" and providing for the payment of such commissions as were then due the plaintiff; *it is held,* that the plaintiff became the defendant's agent, and the defendant became responsible to pay the plaintiff's commissions, even though, the defendant in writing the letter *supposed* the plaintiff *understood* he was to look to Sadler, only, for his commissions, that being a *supposition* the defendant had no reason to make.

The law will presume that the defendant meant what his language by its terms and under the circumstances in which it was used would fairly be understood to mean, and this presumption is a matter of law, and not to be rebutted by proof that he intended something more or different which he made no attempt to express and which the plaintiff neither understood nor had reason to understand.

THIS was an action of book account. The auditor reported that in 1858 and 1859 the defendant was a manufacturer of safes in Troy, New York, and employed one Sadler as his traveling agent, and gave him authority as such to sell safes according to a schedule of prices for the various sizes, and allowed him twenty per cent. commission, but gave him no authority to appoint sub, or local agents anywhere. Sadler engaged persons to help him make sales

Clark *v.* Lillie.

in various localities on such terms as he was able to make with them generally agreeing to allow them five to ten per cent on the sales. These local agents were regarded by the defendant as agents of Sadler, not as his own.

In June, 1858, Sadler called on the plaintiff at his store in Brattleboro, and urged him to buy a Lillie safe, and also to take the agency for the sale of the safes in Brattleboro, and as an inducement offered him ten per cent. commission on all the safes sold in Brattleboro, whether sold by the plaintiff or directly by Sadler himself, and that if he would buy a safe the commission of ten per cent should be allowed on that also, and that he should have a credit of six months. Sadler represented himself to be a traveling agent of the defendant and authorized to make such contracts. The language used by Sadler naturally gave the plaintiff to understand, and he did understand that he was to become the defendant's local agent; nothing was said by Sadler designed or calculated to give the plaintiff to suppose that he was to be the agent of Sadler. The plaintiff agreed to buy a safe and take the agency on the terms proposed.

In June, 1858, the plaintiff wrote to the defendant as follows :

"Brattleboro, June 24th, 1858.

Mr. Lewis Lillie :—*Dear Sir* :—Yours of to-day is at hand. I supposed in trading with Mr. Sadler he would state to you just as he agreed with me. He urged me to take the agency of your safes, and would allow me ten per cent on all sold; he would do all he could to sell, and give me the benefit of ten per cent. on all sales *he* made. He also agreed if he sold one more beside mine I should be allowed ten per cent. discount on mine. He informed me before he left, he had taken an order from Pratt & Wright, therefore there would be commission to me on theirs and ten per cent. discount on mine, six months. There was nothing said about my paying cash, but would give me six months, and before the time expired he thought I could sell enough so that the commissions would pay for mine. I have talked the matter of safes over with some of our people and I think I can get an order for you if, on seeing mine, it appears as well as represented.      *      *      *      *      *      *

Yours truly,                    JOSEPH CLARK."

The defendant replied as follows :

Troy, June 26th, 1858.

JOSEPH CLARK, ESQ. :—*Dear Sir* :—Yours of the 24th is before me. Mr. Sadler was authorized to make a trade about as you say you made with him. Only in making an agency, in the way he traded with you, three months is as long a time as he should have given. But it is right if he so made the trade, *   *   *   . You may settle with Messrs. Pratt & Wright and send me your note for your safe and theirs, six months from date of shipment, less ten per cent. The safe I hope will be satisfactory.

LEWIS LILLIE.

Sadler did not make any specific explanation to the defendant of the contract he had made with the plaintiff, and the defendant allowed the plaintiff the ten per cent. on the sales of those two safes, simply by the direction of Sadler, and as a part of the twenty per cent to which the latter was entitled.

The consequence of the defendant's letter, the plaintiff made efforts recommending the safes through the next winter, and in April, 1859, enabled Sadler, to sell four safes. The amount of the sales was $600. The safes were forwarded by the defendant to said parties and were paid for to him according to contract. The plaintiff made no claim on, or communication to, the defendant till the time of credit for the safes was out ; then he sent to him a demand for $60. being ten per cent commission on the sales of the four safes. The defendant promptly declined to pay anything, on the ground that the plaintiff was no agent of his, and that he was in no way liable to him. The defendant had in the mean time paid Sadler his commission of twenty per cent. on the same sales. He would have readily sent to the plaintiff all, or any part of such commission, had Sadler so directed, but he did not believe, and would not admit, that his relations to the plaintiff were any different from those to any other help Sadler might see fit to employ at his own expense in making his sales. The plaintiff never supposed that he was Sadler's agent, or that Sadler was under any obligation to him.

The court rendered judgment at the September Term, 1866, BAR-

RETT, J. presiding, *pro forma*, for the plaintiff to recover the sum of $83.30,—to which the defendant excepted.

*A. Stoddard*, for the defendant.

Sadler had no authority to constitute the plaintiff an agent of the defendant. Consequently no contract or arrangement made between the plaintiff and Sadler created a liability against the defendant in favor of the plaintiff as his agent. *Schrualing* v. *Thomlinson et al.*, 6 Taunt. 147; *Call* v. *Backhouse*, 148, note; *Sully et al.* v. *Rathbone et al.*, 2 M. & S. 298.

There was mutual misunderstanding. This does not seem to have been the result of moral wrong in any body. It may properly be said to arise from accident. 21 Vt. 191. Under these circumstances, if either party is to suffer loss, who of them shall bear it? The burden of proof is upon the plaintiff. Sadler was a traveling agent or broker, with limited powers. He could not bind his principal when he exceeded his power. 2 Kent's Com. 620. The plaintiff was bound to know the extent of Sadler's power, at his peril. *Ib.* 625–6; *White* v. *Langdon*, 30 Vt. 600.

As Sadler had no authority to constitute the plaintiff agent of the defendant, and the defendant having never understandingly ratified such a contract made with Sadler, nor made such contract directly with the plaintiff, is he estopped from denying the plaintiff's claim? If so, it is by his letter of the 26th of June. To create an estoppel the inquiries to which the defendant replied must have been sufficiently distinct as not to mislead the defendant as to the purpose and object to the plaintiff. It is impossible that he should be entrapped into an estoppel. *Wooley* v. *Chamberlain*, 24 Vt. 270. Nor should he be estopped if his reply to the plaintiff's letter can, in any reasonable view, be regarded as consistent with the facts that actually existed at the time it was written, such facts being consistent with his defence. The defendant was justified in supposing Sadler had not exceeded his authority, unless the plaintiff's letter disclosed the contrary.

The plaintiff if he was entitled to any thing for having "talked the matter of safes over with some of our people," his remedy is upon Sadler. *Jones* v. *Dowman*, 45 E. C. L. 234.

*Field & Tyler*, for the plaintiff.

The report shows that Sadler, by the terms of his agency, had no express authority to appoint local agents for the defendant; that he was accustomed to appoint local agents, but that the defendant regarded them as Sadler's agents, and paid them by his direction, but of this arrangement the plaintiff had no knowledge. It further shows that Sadler called on the plaintiff and claimed he had authority to make him an agent for the defendant; that he made such appointment in the name and for the benefit of the defendant, and that the defendant actually received benefit therefrom, for, by means thereof, he made sale of the six safes mentioned in the report. But the plaintiff, to be doubly sure, wrote to the defendant and inquired if Sadler had authority to make such a contract and appoint him as agent for the defendant. The latter, instead of explaining the precise nature and extent of Sadler's authority, ratified his act and recognized the plaintiff as his own agent, and the plaintiff thereupon proceeded to make sales in his behalf. We think the defendant is bound to pay him. *Cochran* v. *Richardson*, 33 Vt. 170.

The opinion of the court was delivered by

Steele, J. The question is to whom should the plaintiff look for his pay for the services he has rendered in selling the defendant's safes? The defendant has already paid one Sadler for these services and by the arrangement between the defendant and Sadler, Sadler was to pay all commissions to local agents, like the plaintiff, appointed by him. The plaintiff was not made aware, when he was employed, of this arrangement, and though he was employed by the traveling agent, Sadler, he in fact understood he was made the local agent of the defendant, and was to look to him for pay because nothing was said to him "designed or calculated to give him to suppose" he might look to any one else. It was the defendant's goods and not Sadler's he was employed to sell, and he naturally supposed it was the defendant and not Sadler who was to pay him for selling them. Sadler had, however, no actual authority to bind the defendant by a promise to pay local agents a commission. He had authority to make sales himself, and if he procured others to aid him, he, as between himself

26

and the defendant, was bound to see them paid out of the commission allowed him.  If the case stopped here the defendant would not be liable.  But the plaintiff communicated to the defendant truthfully and fully the details of the bargain the traveling agent had made with him to allow him ten per cent. commission on all sales in Brattleboro, and indicated to the defendant that he had some doubt of this agent's authority to make such contracts.  The defendant had no reason to suppose that the plaintiff questioned Sadler's authority to bind himself, or desired information on that point from the defendant.  That authority Sadler would probably have without permission from the defendant.  The defendant ought to have understood from the very fact that the plaintiff was writing *him*, that the plaintiff's doubt was whether Sadler had authority to bind *him*.  The defendant in reply to this communication wrote the plaintiff that Sadler was authorized to make "about such a trade," as he had, and that he would abide by it.  The plaintiff could hardly be expected to understand that the defendant merely meant to say he would abide by a trade in which Sadler undertook to bind himself, nor could he reasonably expect the plaintiff to understand that the defendant was agreeing to abide by only a part of the trade when he made no such qualification to his promise.  It may be said that he did qualify Sadler's bargain as to the time to be given purchasers but this was only calculated to assure the plaintiff that in other respects he was satisfied with the arrangement, and this assurance was confirmed by the defendant's providing in the same letter for the payment to the plaintiff of the commissions due him for sales already made.  In providing for this payment he gives the defendant no intimation that he is acting at the request of Sadler, but pays the debt precisely as if he owed it himself.  This letter was a complete ratification of the contract Sadler had made, and a promise upon valid consideration to the plaintiff by the defendant that he would pay the plaintiff the ten per cent. commission on the sales in Brattleboro.  The auditor finds that the defendant in good faith *supposed* the plaintiff was to look to the traveling agent for his pay and did not understand that the plaintiff was ignorant of the private arrangement between him and Sadler by which Sadler was to pay the local agents.

Clark *v.* Lillie.

The auditor finds that the plaintiff in equally good faith supposed he was to look to the defendant, and it appears that he did not know and had no opportunity to know that he had any right to look to any one else. ( The question really reduces itself to this whether the defendant's liability to the plaintiff is to be governed by what was said between *them*, or by an arrangement between Sadler and the defendant of which they both neglected to inform the plaintiff and for which neglect the plaintiff was not responsible. The defendant may have supposed that Sadler, informed the plaintiff of this arrangement, but the plaintiff was not at fault for his so thinking. On the contrary the plaintiff informed the defendant of the contract with Sadler, and no such qualification being mentioned in the plaintiff's letter the defendant had reason to understand that it had not been made a part of the contract. The law will presume that the defendant meant what his language by its terms and under the circumstances in which it was used would fairly be understood to mean, and this presumption is a matter of law and not to be rebutted by proof that he intended something more or different which he made no attempt to express and which the plaintiff neither understood nor had reason to understand.

The judgment of the county court is affirmed.